# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| FRIENDS OF BLACKWATER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Civil Action No. 04-2000 (ESH)** |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| THE INTERIOR, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM OPINION

Before the Court are cross-motions for summary judgment filed by defendant U.S. Fish and Wildlife Service ("FWS") and plaintiff Friends of Blackwater. The issues for the Court to resolve have narrowed considerably since the filing of the parties' motions, leaving only the question of whether defendants' search for responsive documents was adequate within the meaning of FOIA. Since the Court concludes that it was not, it denies defendants' motion.

## BACKGROUND

In August 2003, plaintiff Friends of Blackwater filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), with the United States Fish and Wildlife Service ("FWS" or "Service") for all documents relating to bird and bat mortality and injury caused by industrial wind turbine power-generating facilities, as well as documents relating to the Service's enforcement of related environmental laws, particularly the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. §§ 703 *et seq.* (2000), the Bald and Golden Eagle Protection Act ("BGEPA"), 16 U.S.C. § 688 (2000), and the Endangered Species Act of 1973 ("ESA"), 16

U.S.C. §§ 1531 *et seq.*  (*See* Harris Decl. ¶ 3 & Ex. A; Defendants' Statement of Material Facts

("Defs.' Facts") ¶ 1; Memorandum in Support of Plaintiff's Cross-Motion for Summary

Judgment and In Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mot.") at 1.)

The FWS's FOIA officer for the Division of Policy and Directives Management

examined the request and determined that the FWS divisions most likely to maintain responsive

documents were the Office of Law Enforcement and the Division of Migratory Bird

Management.  (Defs.' Facts ¶ 3.)  On April 5, 2004, the Office of Law Enforcement produced

eight investigative reports, partially redacted pursuant to FOIA Exemptions 6 and 7(c), which

permit an agency to withhold information to protect personal privacy.  5 U.S.C. §§ 552(b)(6) and

(b)(7)(C).  (Defs.' Facts ¶ 5; Harris Decl. ¶ 6 and Ex. B.)  The Office of Law Enforcement further

withheld 78 investigative reports in full pursuant to FOIA Exemption 7(A), on the grounds that

they "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C.

§ 552(b)(7)(A).  (Defs.' Facts ¶ 5.)  The Division of Migratory Bird Management released one

academic article on avian mortality published by a staff member of the FWS and directed

plaintiff to a website containing more related articles.  (Defs.' Facts ¶ 7.)

Plaintiff initiated an administrative appeal on May 18, 2004, and was informed on

June 25, 2004, that due to a backlog of such requests, the review would be delayed.  (Plaintiff's

Statement of Material Facts (Pl.'s Facts) ¶ 14.)  Under FOIA, plaintiff was entitled to treat the

delay as a denial of its appeal and seek judicial review.  5 U.S.C. §§ 552(a)(4)(B) and

(a)(6)(A)(ii).  Exercising its rights under the statute, plaintiff filed this action on November 16,

2004.  Since the commencement of this suit, the parties have engaged in significant and

productive discussions to narrow the scope of their dispute.  Prior to the filing of their motions

for summary judgment, and after conducting a further search for responsive records, the Service released additional closed investigative files (leaving 57 investigative reports still in dispute), some of the redacted information contained in previously released documents, and more documents from the Division of Migratory Bird Management.  (Pl.'s Facts ¶ 15.)

The Service filed a motion for summary judgment on March 28, 2005, arguing that it had complied with the requirements of FOIA by conducting a search reasonably designed to discover material responsive to plaintiff's request, articulating the rationale behind its search methodology and justifying the withholding of responsive material under various FOIA exemptions. (Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment (Defs.' Mot.) at 7.)  In support of its motion, the Service attached declarations from Donald Harris, an attorney in the Office of the Solicitor at the Department of the Interior who oversaw the processing of responsive documents; Circee Pieters, who is the FOIA Coordinator for the Office of Law Enforcement; Albert Manville, a biologist in the Division of Migratory Bird Management; and James Scott Heard, a Supervisory Special Agent with the FWS's Office of Law Enforcement in Sacramento, California who is responsible for enforcement actions with regard to wind turbine avian mortality in that region.  Each attested to the process used to cull responsive documents from the files of their respective divisions and to the nature of any documents withheld under a statutory exemption.

On May 12, 2005, Friends of Blackwater filed an opposition to defendants' motion for summary judgment, as well as a cross-motion for summary judgment.  Friends of Blackwater asserted two claims in support of its motion: first, that the Service had failed to justify its withholding of documents pursuant to Exemption 7(A) because the FWS had not demonstrated

that the files constituted active law enforcement proceedings and did not disclose reasonably

segregable portions of the withheld files.  (Pl.'s Mot. at 19-29.)  Second, Friends of Blackwater

asserted that the agency had not demonstrated that its search was adequate (Pl.'s Mot. at 27-29),

*i.e.*, "reasonably calculated to uncover all relevant documents."  *Truitt v. Dep't of State*, 897 F.2d

540, 542 (D.C. Cir. 1990) (internal quotation marks omitted).  After the initial filing of the cross

motions for summary judgment, further progress was made.  A telephone conference between

senior staff at the FWS's Office of Law Enforcement and plaintiff's counsel resulted in the June

21, 2005 production of all the law enforcement documents initially withheld by the government

pursuant to Exemption 7(A).  (Defendants' Opposition to Plaintiff's Cross-Motion for Summary

Judgment (Defs.' Opp.) at 5.)  This document production effectively mooted plaintiff's first

ground for summary judgment, leaving only the adequacy of the government's search to be

determined by this Court.

## ANALYSIS

### I.       Summary Judgment Standard

In a FOIA case, summary judgment may be granted to the government if "the agency

proves that it has fully discharged its obligations under the FOIA, after the underlying facts and

the inferences to be drawn from them are construed in the light most favorable to the FOIA

requester."  *Greenberg v. United States Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998);

*see* Fed. R. Civ. P. 56(c).  The Court may award summary judgment based solely on the

information provided in affidavits or declarations when the affidavits or declarations describe

"the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). Review of the agency's denial of a FOIA request is *de novo*, and the agency "bears the burden of establishing the applicability of the claimed exemption." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003).

## II.  Adequacy

### A.  Search of FWS Leadership Offices

Having resolved all disputes regarding defendants' initial nondisclosure of documents based on various FOIA exemptions,, the parties have now narrowed their dispute to only the issue of the adequacy of the government's search. Summary judgment should be issued in favor of the government where the agency can show "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). *See also Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). "[T]he competence of any records-search is a matter dependent upon the circumstances of the case." *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 834 (D.C. Cir. 1979). Thus, in response to a challenge to the adequacy of its search, the agency must provide a "reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials . . . were

searched." *Oglesby*, 920 F.2d at 68. The agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982) ("in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA"), but it cannot be "so general as to raise a serious doubt whether the [agency] conducted a reasonably thorough search of its records." *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). While agency declarations in this regard are afforded a presumption of good faith, *see SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *see also Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001) (adequate affidavit can be rebutted only "with evidence that the agency's search was not made in good faith" (citing *Maynard v. Cent. Intelligence Agency*, 986 F.2d 547, 559 (1st Cir. 1993) and *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985))), if "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

Plaintiff alleges two inadequacies on the part of the Service in conducting its search. First, that its failure to discover in the FWS leadership offices any "records related to FWS's policies, guidelines, criteria, or plans with regard to initiating enforcement action" against wind power facilities demonstrates an inadequate search of those offices. (Reply in Support of Plaintiff's Motion for Summary Judgment (Pl.'s Rep.) at 3-7.) Second, plaintiff argues that the FWS's refusal to forward its FOIA request to the Office of the Secretary of the Interior renders

its search inadequate because policy discussions relating to wind energy development are likely to have occurred between the FWS and the Office of the Secretary.  (*Id*. at 7-10.)

To prove the adequacy of its search, the Service submitted a declaration from Johnny Hunt, the FOIA Officer for the FWS Headquarters Office.  Hunt oversaw the search of FWS leadership offices.  (Hunt Decl. ¶ 7.)  Hunt states that he directed a FOIA specialist "to conduct a search for responsive records, and provided her with a description of the records sought."  (*Id*. ¶ 9.)  Hunt goes on to state that the electronic tracking system used by the FWS "will search according to author, subject matter, and period."  (*Id*.)  In addition, the FOIA specialist conducted a "manual search" and a search of the electronic mailboxes in the leadership offices.  (*Id*.)  These search methods returned "no records responsive to the request."  (*Id*. ¶ 10.)  Friends of Blackwater counters that Hunt's description of the agency's search methods fails to meet *Oglesby*'s mandate that the agency's affidavit be "reasonably detailed" and set forth the "search terms" used to execute the search.   920 F.2d at 68.   Indeed, Hunt's Declaration fails to enumerate any specific search terms used in examining the agency's electronic files.  While this fact alone might not be enough to invalidate an otherwise adequate affidavit, other evidence calls into question the adequacy of the search.  *See Perry*, 684 F.2d at 127 ("countervailing evidence or apparent inconsistency of proof" can undermine an otherwise valid affidavit).  Specifically, at least two documents that appear to have originated in the FWS Director's Office were produced to plaintiff by other bureaus during the initial search, yet no drafts or related correspondence were turned up in the FWS's search of the Director's Office.  (Pl.'s Supp. Exs. B & C.)  The plaintiff calls this "inconceivable" (Pl.'s Reply at 3), and the Court is inclined to agree.  "An agency may not ignore 'positive indications of overlooked materials.'"  *Defenders of Wildlife v. United States*

*Dep't of Interior*, 314 F. Supp. 2d 1, 10 (D.D.C. 2004) (quoting *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).  As this Court "evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception," *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), the failure to produce documents known to have originated in the Director's Office casts "substantial doubt" on the sufficiency of the search of that office.  *Truitt*, 897 F.2d at 542.  Such a failure calls into question whether the search was "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351.  Without evidence in the agency's affidavit of the specific search terms used to carry out the search, *Judicial Watch v. United States Dep't of Justice*, 185 F. Supp. 2d 54, 64 (D.D.C. 2002), and in light of evidence that responsive documents originated in and are likely to be contained in the files of FWS leadership offices, *Defenders of Wildlife*, 314 F. Supp. 2d at 12, the Court finds that the agency's search of those offices was inadequate.

**B.**   **Failure to Refer Plaintiff's Request to the Office of the Secretary of the Interior**

Friends of Blackwater further contests the agency's failure to forward its FOIA request to the Office of the Secretary of the Department of the Interior.  It is the policy of the Department of the Interior that individual bureaus within the Department forward FOIA requests to another bureau if "it knows another bureau has or is likely to have" responsive documents.  43 C.F.R. § 2.22(a)(1).  Plaintiff contends that responsive documents "almost certainly" are maintained within the files of the Office of the Secretary because the Secretary "directly oversees" the FWS and is likely to have discussed enforcement with the FWS as part of its "strong push" for wind

energy development.  (Pl.'s Reply at 8.)  Plaintiff further contends that forcing it to file a second

FOIA request will needlessly drive up costs and unnecessarily delay the disclosure of relevant

information.  (*Id*.)

The legal burden resides with the agency to "demonstrate beyond material doubt that its

search was reasonably calculated to uncover all relevant documents."  *The Nation Magazine v.*

*United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotation marks

omitted).  As this Court held in *Defenders of Wildlife*, failure by one DOI office to refer a FOIA

request to another that is "likely to have" responsive documents is sufficient to render the

agency's search inadequate.  314 F. Supp. 2d at 13-14.  In *Defenders of Wildlife*, plaintiff sought

documents relating to compliance with federal ethics laws and conflicts of interest involving the

Deputy Secretary of the Interior.  *Id*. at 5-6.  The DOI office to which the FOIA request was

directed failed to refer the request to the Solicitor's Office and the Office of the Inspector

General, despite the fact that those offices have responsibility for investigating ethics violations.

*Id*. at 13-14.  Similarly, in *Wilderness Soc'y v. United States Dep't of the Interior*, 344 F.

Supp. 2d 1 (D.D.C. 2004), plaintiff requested documents relating to the settlement of a lawsuit,

yet the agency's search was inadequate because it failed to refer the request to the Office of the

Solicitor.  *Id*. at 21.  Here, plaintiff has requested documents relating to the FWS's "policies,

guidelines, criteria, or plans with regard to initiating enforcement action against . . . any wind

power facility."  (Harris Decl. Ex. A.)  Plaintiff asserts that "documents pertaining to overarching

considerations of enforcement as a general policy matter" are likely to be found in the Office of

the Secretary of the Interior.  (Pl.'s Mot. at 28.)  The agency responds that a request to search of

the Office of the Secretary was not embraced by plaintiff's original request letter or in its

complaint.  (Defs.' Opp. at 8 n.3.) The Service makes no claim that responsive documents are not likely to be found in the Office of the Secretary, but rather that it has "no obligation" to perform the search based on the scope of the original request.  *Id*.  Yet, this argument fails to take into account 43 C.F.R. § 2.22(a)(1), which imposes just such an obligation on offices within the Department of the Interior.  Thus, not only does the Service have an obligation to construe the language of plaintiff's FOIA request liberally, *The Nation Magazine*, 71 F.3d at 890, under 43 C.F.R. § 2.22(a)(1) it must refer the request to another office if it is reasonably likely to contain responsive records.  *Defenders of Wildlife*, 314 F.2d at 13-14.  As pointed out by plaintiff (and not contested by defendants), the Office of the Secretary is responsible for setting policy throughout the Department of the Interior and it is reasonable to conclude that responsive documents are likely to be maintained there.  Therefore, the Service's failure to refer plaintiff's FOIA request to the Office of the Secretary renders its search inadequate.

## CONCLUSION

Having considered the pleadings and the entire record herein, the Court grants plaintiff's motion for summary judgment and denies defendants' motion.  By November 4, 2005, the FWS shall conduct an adequate search of its leadership offices and produce all responsive documents, or in the alternative, it may submit an affidavit demonstrating that its initial search was adequate and explaining why its prior search did not turn up documents that would reasonably be expected to be located there.  The FWS is further ordered to refer plaintiff's FOIA request to the Office of the Secretary of the Interior for immediate action.  All responsive

documents from the Office of the Secretary shall likewise be produced to plaintiff by

November 4, 2005.  A separate Order accompanies this Memorandum Opinion.


_____s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   September 20, 2005